UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John St. Marie,

    Plaintiff,

v.   Civil No. 09-3141 (JNE/AJB)
    ORDER

Cal R. Ludeman, Commissioner,
Minnesota Department of Human
Services,

    Defendant.

---

Emily P. Hennen, Esq., Robins Kaplan Miller & Ciresi LLP, appeared for Plaintiff John St. Marie.

Cara M. Hawkinson, Esq., Minnesota Attorney General's Office, appeared for Defendant Cal R. Ludeman.

---

In this action, John St. Marie maintains that the enforcement of Minnesota's Medicaid-based medical assistance benefits (MA) program by Cal R. Ludeman, Commissioner of the Minnesota Department of Human Services (Commissioner), violates Title II of the Americans with Disabilities Act (Title II), 42 U.S.C. § 12132 (2006), and Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794(a) (2006). On February 26, 2010, St. Marie filed a Motion for a Temporary Restraining Order. After the March 4, 2010, hearing on St. Marie's motion, the parties represented to the Court that they had tentatively agreed on a proposed temporary restraining order. The Court was informed on March 9, 2010, that no final agreement can be reached. For the reasons discussed below, the Court denies St. Marie's motion.

## I.     BACKGROUND

Medicaid was enacted in 1965 "to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services." *Atkins v. Rivera*,

1

477 U.S. 154, 156 (1986). Medicaid encourages states to provide medical assistance by allocating funds to states that maintain a plan for medical assistance that has been approved by the Secretary of Health and Human Services. *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir. 2006); *see also* 42 U.S.C. § 1396 (2006). State participation in Medicaid is voluntary, but a state that chooses to participate must "comply with all federal statutory and regulatory requirements." *Lankford*, 451 F.3d at 504.

Medicaid contemplates three categories of beneficiaries: "the 'mandatory categorically needy,' the 'optional categorically needy,' and the 'optional medically needy.'" *Lewis v. Thompson*, 252 F.3d 567, 570 (2d Cir. 2001). The first category includes "financially-needy blind, aged, and disabled individuals, pregnant women, and children." *Lankford*, 451 F.3d at 504 (citing 42 U.S.C. § 1396a(a)(10)(A)). A state electing to participate in Medicaid must provide coverage to individuals in that category. *Id.*; *see also Atkins*, 477 U.S. at 157. A state has the option of expanding its coverage to the other two categories. *Lewis*, 252 F.3d at 570. One class within the "optional categorically needy" category consists of individuals who, but for excess earnings, "would be considered to be receiving supplemental security income, who [are] at least 16, but less than 65, years of age, and whose assets, resources, and earned or unearned income (or both) do not exceed such limitations (if any) as the State may establish." 42 U.S.C. § 1396a(a)(10)(A)(ii)(XV). The "optional medically needy" category consists of individuals who "do not qualify under a federal program, but lack the resources to obtain adequate medical care." *Lankford*, 451 F.3d at 504. These individuals qualify for Medicaid if their medical expenses "effectively reduce[] their income to the eligibility level." *Atkins*, 477 U.S. at 158 (citing 42 U.S.C. § 1396a(a)(17)). The reduction in income to the eligibility level is referred to as a "spend down." *See id.*; *Darling v. Sullivan*, 914 F.2d 132, 133 n.3 (8th Cir. 1990) ("Under a spend-

down provision, an individual whose income exceeds the state standard can become eligible for Medicaid when the excess (that part of his income that exceeds the state standard) is consumed by expenses for medical care.").

Minnesota participates in Medicaid by offering benefits through its MA program. *See Estate of Atkinson v. Minn. Dep't of Human Servs.*, 564 N.W.2d 209, 210 (Minn. 1997). A person with a disability or at least 65 years old may be eligible for MA if his income is at or below "100 percent of the federal poverty guidelines." Minn. Stat. § 256B.056, subd. 4(a) (2008). A person with a disability or at least 65 years old whose income exceeds 100 percent of the federal poverty guidelines can qualify for benefits if he "spends down" his income to 75 percent of those guidelines. *Id.* § 256B.056, subds. 5, 5c(b). That amount is presently $911.

Minnesota also offers Medical Assistance for Employed Persons with Disabilities (MA-EPD) pursuant to 42 U.S.C. § 1396a(a)(10)(A)(ii)(XV). *See* Minn. Stat. § 256B.057, subd. 9 (2008). According to the Commissioner, the MA-EPD program "promotes competitive employment and the economic self-sufficiency of people with disabilities [through] access to MA for working-age individuals (16-64 years of age) who are disabled and employed." MA-EPD benefits pay for medical assistance to a person "who is employed and who: (1) meets the definition of disabled under the supplemental security income program; (2) is at least 16 but less than 65 years of age; (3) meets the asset limits in paragraph (c); and (4) effective November 1, 2003, pays a premium and other obligations under paragraph (e)." *Id.* § 256B.057, subd. 9(a).

St. Marie was born on April 25, 1944. He contracted polio at the age of eight, which resulted in quadriplegia. Despite his physical limitations, St. Marie graduated from college and law school. He practiced law full-time as an assistant Hennepin County attorney until his medical retirement in January 2003. In May 2004, St. Marie experienced respiratory

degeneration that required hospitalization for more than four months. The only solution to St. Marie's respiratory problems was a permanent tracheotomy and around-the-clock use of a ventilator. St. Marie returned to his home under twenty-four-hour-per-day nursing care in addition to several hours of daily care from a personal care assistant. Because St. Marie continued limited employment, his at-home care was provided under the MA-EPD program for a monthly premium of $450 to $460.

Before April 2009, the Minnesota Department of Human Services (DHS) informed St. Marie that he would no longer be eligible for the MA-EPD program as of his sixty-fifth birthday. St. Marie was also informed that he would be required to spend down $4,586 of his countable monthly income to receive benefits under the MA program. St. Marie administratively appealed DHS's benefits determination. His MA-EPD benefits were continued pending appeal. The administrative law judge upheld DHS's determination. St. Marie then appealed to the state district court. The case was dismissed on January 18, 2010. DHS notified St. Marie on February 5, 2010, that he would be required to spend down $4,758 per month to receive MA benefits beginning on March 1, 2010. According to St. Marie, enforcement of the spend-down requirement will force him to be cared for in an institutional setting so that his wife can receive $2,739 per month pursuant to Minn. Stat. §§ 256B.0575, .058.

After considering other program options, DHS determined that St. Marie is currently eligible only for MA benefits. Specifically, DHS considered and rejected St. Marie's eligibility for the Elderly Waiver (EW) program and EW Conversion. EW is available to individuals who are at least 65 years old and require nursing home level care but choose to reside in the community. *See id.* § 256B.0915, subd. 1. An individual is eligible for EW only if the cost for the home and community-based services does not exceed the estimated nursing home costs for

the individual. *Id.* § 256B.0915, subd. 3a. DHS determined that St. Marie's home and community-based services would exceed EW's monthly cap of $5,227. EW Conversion allows an individual residing in a nursing home for at least thirty consecutive days to convert the daily cost of nursing home care into benefit payments to provide for home and community-based care. *Id.* § 256B.0915, subd. 3b. DHS determined that St. Marie did not qualify for EW Conversion because he has not resided for thirty consecutive days in a nursing home.

St. Marie brought this action on November 6, 2009, seeking to enjoin the Commissioner from enforcing the monthly spend down and a declaration that the spend down violates Title II and Section 504.

## II. DISCUSSION

*A. Temporary restraining order*

To determine whether to grant a motion for a temporary restraining order, a court must consider: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm absent the injunction; (3) the balance between this harm and the harm experienced by other parties if the injunction issues; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is an extraordinary remedy, *see Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987), and the party requesting the injunction bears the "complete burden" of proving he is entitled to such relief, *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). While no one factor is determinative, likelihood of success on the merits is generally the touchstone inquiry. *Dataphase*, 640 F.2d at 113.

Because St. Marie challenges the implementation of a state statute, he must show that he is "likely to prevail" on his Title II and Section 504 claims. *See Planned Parenthood Minn.,*

5

*N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). In conformance with Title II, the United States Attorney General promulgated regulations implementing § 12132. *See Olmstead v. L.C.*, 527 U.S. 581, 591 (1999) (citing 42 U.S.C. § 12134(a)). The "reasonable-modifications regulation" requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7) (2009). Another regulation, the "integration regulation," states that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Id.* § 35.130(d). The most integrated setting is "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." *Olmstead*, 527 U.S. at 592 (quotation marks omitted). "Unjustified isolation . . . is properly regarded as discrimination based on disability." *Id.* at 597. Section 504 contains statutory and regulatory requirements similar to Title II, and courts generally interpret the statutes coextensively. *See Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998) ("The rights, procedures, and enforcement remedies under Title II are the same as under section 504."); *Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir.

6

2004); *see also* 29 U.S.C. § 794(a); 28 C.F.R. § 41.51(d) (2009).  Accordingly, this Order refers to Title II but applies equally to Section 504.

St. Marie argues that the Commissioner's enforcement of either the MA-EPD program's age requirement or the MA program's spend-down requirement would force him to move from his home into an institution in violation of the integration regulation.  The Commissioner contends that St. Marie is not a "qualified individual with a disability" because the requirements are "essential eligibility requirements" such that their modification would fundamentally alter the nature of the programs.  The Court agrees with the Commissioner.  Specifically, MA-EPD is a program designed to encourage employment and participation in the community by individuals with disabilities.  Thus, an age limit directed toward working-age individuals is an essential eligibility requirement of the MA-EPD program, *cf. Pottgen v. Missouri State High School Activities Association*, 40 F.3d 926, 929 (8th Cir. 1994) (finding age to be an essential eligibility requirement of high school athletics), and St. Marie is not qualified for that program.  Similarly, a waiver of the spend-down requirement would fundamentally alter the nature of the MA program by effectively eliminating the needs-based approach upon which Medicaid and the MA program are founded.  Therefore, the Court determines that St. Marie has not established that he is likely to prevail on the merits of his claims as set forth in his memorandum in support of his motion for a temporary restraining order.

Moreover, the remaining *Dataphase* factors do not overcome St. Marie's failure to establish a likelihood of success on the merits.  First, the Court recognizes that unjustifiable institutionalization and St. Marie's likely inability to recover damages for any unjustifiable institutionalization support a finding of irreparable harm.  *See Katie A. v. Los Angeles County*, 481 F.3d 1150, 1156 (9th Cir. 2007) (noting that a district court properly considered unnecessary

7

institutionalization in finding irreparable harm); *Daniel B. v. White*, Civ. No. 79-4088, 1991 U.S. Dist. LEXIS 4925, at *7 (E.D. Pa. Apr. 11, 1991) ("Continued institutionalization of the class members, even for a short time, will cause irreparable harm."); *see also Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000) (finding irreparable harm in part because "[r]elief in the form of money damages could well be barred by . . . sovereign immunity"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 447 (8th Cir. 1995) (noting that a state official can be sued for prospective injunctive relief but not retroactive monetary relief). St. Marie, however, was informed on February 5, 2010, at the latest, that the Commissioner intended to enforce the spend-down requirement on March 1, 2010. Despite this notice, the instant motion was not filed until February 26, 2010. This three-week delay undermines St. Marie's claims of imminent irreparable harm. Second, the Commissioner would be harmed by a federal court enjoining the administration of a state medical assistance program. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., as Circuit Justice) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Although this harm is not dispositive, *see Independent Living Center of Southern California, Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009), it counterbalances the potential irreparable harm alleged by St. Marie. Finally, although there is a strong public interest in avoiding unjustifiable isolation of disabled individuals, *cf. Townsend v. Quasim*, 328 F.3d 511, 519 (9th Cir. 2003) (identifying "federal and state governments' growing recognition of the value of community-based care for disabled persons"), that public interest does not alone warrant the issuance of a temporary restraining order under the circumstances of this case. Accordingly, the Court denies St. Marie's motion.

*B.     Preliminary injunction*

At the hearing on St. Marie's motion, the Court raised an additional issue. If St. Marie received at-home care, his spend down would be $4,758 and the combined income for him and his spouse would be $911 (i.e., 75 percent of the federal poverty guidelines). On the other hand, if he received care in an institution, his "spend down" would take on a different characteristic. Specifically, Minn. Stat. § 256B.0575, subd. 1, provides that an institutionalized person's income that exceeds certain deductions "must be applied to the cost of institutional care." The "spend down" of an institutionalized person can thus be characterized as all of the person's income except for permitted deductions. One permitted deduction is a "monthly income allowance" for an institutionalized person's spouse. *Id.* § 256B.0575, subd. 1(a)(4); *see also id.* § 256B.058, subd. 2 (identifying the method by which monthly income allowance is calculated). Here, St. Marie's spouse would apparently be entitled to $2,739 per month and the remainder (less any other applicable deductions) would be "spent down" to pay for St. Marie's institutionalized care. Because the monthly income allowance permits St. Marie's spouse to retain significantly more income than 75 percent of the federal poverty guidelines, St. Marie has a strong incentive to receive care in an institution rather than at home. The issue of whether such an incentive constitutes "unjustified isolation" in violation of *Olmstead* was not addressed by either party and is not properly before the Court. To fully address this issue, and any other issues raised by the parties, this Order establishes a hearing date and briefing schedule to determine the propriety of preliminary injunctive relief.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. St. Marie's Motion for a Temporary Restraining Order [Docket No. 28] is DENIED.

2. A hearing shall be held before the Court on Tuesday, April 20, 2010, at 2:00 p.m. to determine whether preliminary injunctive relief is warranted. St. Marie's memorandum in support of a preliminary injunction is due on or before March 25, 2010. The Commissioner's opposition memorandum is due on or before April 8, 2010. St. Marie's reply memorandum, if any, is due on or before April 15, 2010. The memoranda shall adhere to Local Rule 7.1(d). The hearing date and briefing schedule are subject to mutual modification by the parties with Court approval.

Dated: March 11, 2010

                                            s/ Joan N. Ericksen
                                            JOAN N. ERICKSEN
                                            United States District Judge